IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES C. KAUFMANN, | No. CIV S-10-1098-CMK |
|     Plaintiff, | |
|   vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
|     Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 18) and defendant's cross-motion for summary judgment (Doc. 19). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/ / /

/ / /

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits protectively on May 31, 2007, alleging an onset[2] of disability on May 15, 2007, due to mental impairments. (Certified administrative record ("CAR") 48-52, 64-66, 170-80).  Specifically, plaintiff claims disability based on impairments due to Bipolar, ADHD, depression, anxiety, and dyslexia. (CAR 171).  Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff requested an administrative hearing, which was held on September 22, 2009, before Administrative Law Judge ("ALJ") William C. Thompson Jr.  In a December 3, 2009 decision, the ALJ concluded that plaintiff is not disabled[3] based on the following findings:

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Plaintiff's original onset date was January 1, 2005.  This date was modified at the hearing to the protective filing date of May 15, 2007.

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional

/ / /

1. The claimant met the insured status requirements of the Social Security Act only though June 20, 2006.

2. The claimant has not engaged in substantial gainful activity since May 15, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: history of attention deficit hyperactivity disorder (ADHD), substance abuse in purported remission, and antisocial personality disorder. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to unskilled work with limited contact with coworkers and the public.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 28, 1962 and was 45 years old, which is defined as a "younger individual age 45-49," on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a "marginal" education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

---

capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

      11.      The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2007 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(CAR 8-15). After the Appeals Council declined review on March 5, 2010, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /

/ / /

## III.  DISCUSSION

Plaintiff argues the ALJ erred in two ways: (1) the ALJ improperly discounted the opinion of two consulting physicians; and (2) the ALJ failed to consider the vocational expert's testimony based on a proper hypothetical including all of plaintiff's limitations.

### A.  MEDICAL OPINION OF TREATING PHYSICIAN

Plaintiff contends the ALJ erred in rejecting the examining psychologists' opinions without a legitimate basis.  Defendant counters that the ALJ gave proper and valid reasons for discounting the medical opinions.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

1  81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

2  the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

3  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

4  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

5  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

6  without other evidence, is insufficient to reject the opinion of a treating or examining

7  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

8  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

9  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

10  see also Magallanes, 881 F.2d at 751.

11        Here, Dr. Reynolds found the following functional limitations:

> 1. Understand and remember instructions:  No functional limitations noted with memory.  However, some apparent problems with comprehension based upon his responses to exam questions.
> 2. Sustain concentration and attention and persist: Problems with attention based upon history of ADD/ADHD and being easily distracted, impulsive and interrupting others.
> 3. Engage in appropriate social interaction:  He has serious problems getting along with others.  He is difficult, antagonistic, has a history of assault, interrupts others and can present as threatening as a defense.  He is rebellious and has had problems with authority in the past.  These problems stem from underlying characterological problems rather than an Axis I condition.  It is difficult to imagine that coworkers would enjoy having this individual in their workspace.
>     Comment on adaptive skills:  He is a low functioning individual, has difficulty holding on to a job and getting along with others.
>     Comment on consistency of findings:  His behavior is consistent with the records.  There is some inconsistency based upon the fact that he could read the written instructions provided yet is unable to read and write.  He could not identify the date, etc. or the city, etc.  He seemed to be exaggerating or simply was being uncooperative.  (CAR 287-88).

24  / / /

25  / / /

26  / / /

1     Following a separate evaluation, Dr. White concluded:

> Mr. Kaufman presented as a middle-aged man with a long prior history of substance abuse, maladaptive patters of behavior dating back to adolescence a developmental reading disorder (dyslexia) and he [sic] symptoms of Attention Deficit Hyperactivity Disorder that have been present since childhood and continue to persist in adulthood.  In combination, these several mental disorders are mutually aggravating and together are severe enough, in my opinion, to preclude Mr. Kaufman from substantial gainful activity at this time.  Let me hasten to add that, in my opinion, should Mr. Kaufman totally refrain from the use of marijuana, he would still be work-disabled; in all likelihood his overall functioning would deteriorate further from the impaired level that he presently demonstrates.  While he might well benefit from outpatient psychiatric treatment, he is resistant to any kind of psychiatric intervention and has not complied with treatment offered him in the past.  Mr. Kaufman's pervasive and severe personality deficits and distortions are not likely to be significantly diminished by psychotherapy and/or psychotropic medication, even were Mr. Kaufman to become open to psychiatric treatment.
> I do not find evidence of symptoms that would warrant a diagnosis of Bipolar Disorder.  (CAR 321-22).

    As for Dr. White's assessment of plaintiff's limitations, she found plaintiff to be limited in all aspects.  She found plaintiff was mildly limited in his ability to understand and remember short and simple instructions, and to be aware of normal hazzards.  She found plaintiff moderately limited in his ability to remember locations and procedures, understand and remember detailed instructions, carry out simple instructions, make simple decisions, ask simple questions, accept instructions and respond appropriately, maintain socially appropriate behavior, respond appropriately to changes, and travel in unfamiliar places.  She also found plaintiff markedly limited in his ability to carry out detailed instructions, maintain attention and concentration, perform activities within a schedule, maintain an ordinary routine, work in coordination with or proximity to others, complete a normal workday or workweek, interact appropriately with the general public, get along with co-workers, and set realistic goals.  (CAR 323-25).

/ / /

/ / /

The ALJ gave little weight to either opinion. As to Dr. Reynolds' opinion, the ALJ stated:

> The doctor concluded that the claimant had no functional limitations with memory but some apparent problems with comprehension based upon his responses to exam questions. The doctor noted problems with attention based upon a history of ADD/ADHD and being easily distracted, impulsive and interrupting others. The psychologist opined that the claimant had serious problems getting along with others, although this stemmed from underlying characterological problems rather from than an Axis I condition. I give little weight to this assessment as it appears that it was based mostly on the claimant's allegations with little testing or observation. Furthermore, the validity of the limited testing is questionable considering the examiner's statements regarding exaggeration and inconsistencies. (CAR 13).

As to Dr. White's opinion, the ALJ stated:

> In a psychiatric evaluation report, the examiner diagnosed the claimant with ADHD, by history and present observable symptoms of distractibility, reduced attention span, poor concentration, motor restlessness and impulsivity; developmental reading disorder, dyslexia; personality disorder, mixed type of predominant paranoid, antisocial and borderline traits; and marijuana dependence, chronic, long-term and currently active. The doctor concluded that in combination, the mental disorders were severe enough to preclude the claimant from substantial gainful activity. The doctor noted marked limitations in several areas including in the areas of sustained concentration and persistence, social interaction, and adaptation. I assign little weight to this assessment as it is at odds with the claimant's record of treatment and daily activities. Furthermore, there is very little testing or observations to back the doctor's findings. The testing that was done is tainted by a lack of cooperation which materially affected the claimant's scores. Given the lack of valid testing, I conclude that the doctor relied heavily on the claimant's subjective complaints. (CAR 13-14).

In addition, the ALJ determined plaintiff was less than credible[4] in relation to his statements concerning the intensity, persistence and limiting effect of his symptoms. The ALJ noted:

---

[4] The ALJ's credibility determination is not challenged in this action, and the court therefore properly defers to the Commissioner's discretion. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).

> There is evidence that the claimant was less than fully cooperative and was engaging in possible misrepresentation of his abilities during examinations. In a July 2007 examination report, the examining psychologist pointed out that although the claimant allegedly could not read and write he was able to read the written instructions provided during testing. The examiner further described the claimant as "not cooperative" and "evasive." The doctor indicated that the claimant tended to "exaggerate." Even a doctor whom the claimant[] was referred to by his attorney questioned the claimant's credibility. In a psychiatric evaluation, the doctor opined that the claimant's description of his criminal record was "not very credible." The doctor further indicating that the claimant's score on an intellectual functioning test was probably inaccurate because a "lack of cooperation" in answering some questions. These statements damage the claimant's credibility. (CAR 12).

Both of the doctors opinions at issue here are examining professionals. There is no opinion from a treating doctor as to plaintiff's limitations. There is, however, an opinion from a non-examining professional. The non-examining doctor's assessment was that plaintiff is moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, interact appropriately with the general public, and get along with coworkers, due to his bipolar and ADD symptomatology. However, he was not significantly limited otherwise. (CAR 290-292).

Plaintiff argues the ALJ inappropriately discounted both Dr. White and Dr. Reynold's opinions. As to Dr. White, plaintiff contends it was the ALJ who found plaintiff's lack of cooperation limiting, not Dr. White who would have been the appropriate one to have done so. Overstepping his qualifications, the ALJ discounted Dr. White's opinion based on plaintiff's lack of cooperation when Dr. White did not find it limited her opinion at all. In addition, Dr. White interviewed and examined plaintiff, and her report contained extensive clinical observations, and did not qualify her assessed limitations in any way. Similarly, as to Dr. Reynold's assessment, plaintiff argues Dr. Reynolds conducted an extensive mental status examination, she detailed her clinical observations of plaintiff, and did not question the validity of her examination or assessment of plaintiff's limitations.

Defendant contends the ALJ's evaluation of the medical opinions was appropriate, especially in light of the ALJ's determination that plaintiff's allegations lack credibility. Defendant argues the ALJ found plaintiff's lack of cooperation during the examinations tainted the results. In addition, the ALJ's determination is supported by plaintiff's lack of consistent treatment, absence of treating doctor's opinion as to his limitations, plaintiff's rather normal activities of daily living, and the contrary opinion of state agency psychologists. All of these reasons support the ALJ's evaluation.

The ALJ discredited two examining physicians' opinions. While slightly at odd with each other, there is no other treating or examining physician's opinion in the record which contradicts these two opinions. In order to properly reject such an opinion, the ALJ was required to set forth clear and convincing reasons supported by substantial evidence. Here, the ALJ first determined that plaintiff's allegations were not credible. That finding is not challenged here. The ALJ then determined that both examining physicians based their findings primarily on plaintiff's subjective complaints, which he determined were not credible. In addition, the ALJ found the limiting testing the doctors conducted during the examination was questionable as both doctors found plaintiff to be uncooperative, inconsistent, and tending to exaggeration.

The undersigned finds the reasons the ALJ provided for discounting the examining doctors' limitations to be clear and convincing. In addition to the lack of credibility and cooperation from plaintiff, the ALJ also had the supporting opinion of the non-examining doctor. While insufficient on its own, this opinion with the ALJ's other reasons for discounting the examining physicians' opinions is a sufficient basis for this court not to disturb the ALJ's decision.

### B. VOCATIONAL EXPERT TESTIMONY

Next, plaintiff contends that because the ALJ failed to properly credit his limitations as set forth by the examining physicians, his hypothetical posed to the vocational expert was insufficient. Defendant counters that the ALJ's hypothetical was sufficient as it

included all of the limitations he found were supported by the record, after properly discounting the examining doctors' assessments.

The ALJ may meet his burden by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Here, the ALJ posed the following hypothetical to the vocational expert:

> I want you to consider a 47-year-old individual educated to the fifth grade who is illiterate and has the past work as a construction laborer.  Further, consider that this individual has no exertional limitations but mentally he's limited to work involving simple instructions, having restricted contact with coworkers as well as restricted contact with the public.  By restricted contact with coworkers I mean he can work in the presence of others but should not be part of a work team or a cooperative work process.  With those limitations would there be jobs that individual could perform? (CAR 41).

/ / /

/ / /

To this hypothetical, the vocational expert identified three jobs in significant numbers, even after a 50 percent erosion for the nonexertional limitations, which such a person could perform. Plaintiff's attorney then proceeded to pose two additional hypotheticals to the vocational expert. In response to those hypotheticals, which he states were based on the examining physicians' limitations, the vocational expert testified there were no jobs such an individual could perform. She further testified that "[b]eing potentially dangerous to coworkers or supervisors" would "not [be] acceptable in any type of competitive job in the labor market." (CAR 44).

The issue is whether the hypothetical the ALJ posed to the vocational expert was sufficient and whether it identified all of plaintiff's limitations. As discussed above, the court finds the ALJ did not err in discounting the examining physicians' opinions. Based on that determination, the ALJ found plaintiff's limitations to include those set forth by the non-examining physician, including the ability to remember, understand, and carry out only simple instructions, and limited contact with coworkers and the public in general.

The hypothetical the ALJ posed to the vocation expert took into account the limitations he accepted and set forth in the residual functional capacity (RFC) assessment. While the ALJ's determination as to plaintiff's RFC may not have been the only one possible, it is supported by substantial evidence, and as such will not be disturbed here. Similarly, the hypothetical the ALJ posed to the vocational expert included all of the limitations he determined to be supported by the evidence, and since that determination was not erroneous, the hypothetical posed must be considered legally adequate. The court, therefore, finds no error in the ALJ's hypothetical, nor in the vocational expert's testimony based thereon.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

    1.    Plaintiff's motion for summary judgment (Doc. 18) is denied;

2. Defendant's cross-motion for summary judgment (Doc. 19) is granted; and

3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: September 15, 2011

                                                      *Craig M. Kellison*
                                       **CRAIG M. KELLISON**
                                       UNITED STATES MAGISTRATE JUDGE